**JEFFERSON COUNTY v. HARD, Comptroller, et al.**

3 Div. 67.

Supreme Court of Alabama.

June 20, 1933.

Rehearing Denied June 29, 1933.

Thomas J. Judge and Basil A. Wood, both of Birmingham, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Frontis H. Moore, Asst. Atty. Gen., for appellees.

202

G. W. L. Smith, of Brewton, and Travis Williams, of Russellville, amici curiæ.

BOULDIN, Justice.

This proceeding by mandamus seeks to require the state tax commissioner to ascertain and certify to the state comptroller the amount of certain excise taxes which were collected and paid into the state treasury by distributors and dealers in gasoline and other motor fuels in Jefferson county during the month of April, 1933, and to require the comptroller to issue a warrant on the state treasury in favor of Jefferson county for such funds.

The funds in question are derived from levies of gallonage taxes on gasoline and other motor fuels sold or distributed in this state, and which, under the levying statutes, are now being distributed monthly to the several counties in equal amounts, and devoted solely to the construction and maintenance of highways and bridges in the several counties.

It is charged: "* * * That during the month of April, 1933, the gasoline purchasers of Jefferson County purchased gasoline in Jefferson County and paid as taxes under said Act thereon a sum of money greatly in excess of the sum of money which Jefferson County receives in the distribution provided for in said Act."

The statutory system of distribution, rather than the levies of such taxes, is challenged as unconstitutional, and violative of sections 13, 71 and 217 of the state Constitution and the Fourteenth Amendment of the Constitution of the United States. More specifically, it is alleged: "It is unconstitutional and void in this: that the tax levied by said Act is levied for County purposes and that the distribution thereof is not in proportion to the amount paid by each County. * * * that the distribution provided for in said Act is not uniform and violates the principle that there shall be no taxation without representation. * * * that it does not accord to this Petitioner the equal protection of law and takes its property without due process of law. * * * that the tax levied by said Act is a county tax and the Legislature could not appropriate the county taxes of Jefferson County for the use, benefit and purposes of other counties of the State of Alabama."

The controlling question, that most stressed in argument, is whether these are county taxes or state taxes.

If county taxes, it may be conceded the Legislature could not, by a system of collection and distribution, give the funds of one county to another.

The original statute, Gen. Acts 1923, p. 36, levied a two-cent gallonage tax, and provided the proceeds should be divided between the state and the several counties, one-half to be credited to the general funds of the state to be used for general state purposes, and one-half distributed to the several counties in equal amounts, to be placed in the road and bridge funds of the several counties, and used solely for the construction and maintenance of public highways and bridges in such counties. By section 83 of the General Revenue Act of the same session (Gen. Acts 1923, p. 197), the whole of such funds was distributed among the several counties in equal amounts for like purposes. The statute was further amended in 1927 (Gen. Acts 1927, p. 326), looking, among other things, to a system of accounting and payment of the tax at the point of storage and withdrawal for distribution and sale, a more centralized and convenient method of collecting the tax.

The act of 1923 was further amended in 1931 (Gen. Acts 1931, p. 458), among other things, throwing greater safeguards around the use and expenditure of such funds by county authorities.

By another and separate act of 1931 (Gen. Acts 1931, p. 859), an additional one-cent gallonage tax was imposed, the proceeds to be paid into the state treasury to the credit of the state road and bridge fund to be used by the state highway commission for highway purposes, until October 1, 1932, and thereafter to be divided among the several counties in the same manner and for the same purposes as the two-cent tax above mentioned.

The Attorney General calls attention to another act of 1927 (Gen. Acts 1927, p. 16), levy-

ing another and distinct two-cent gallonage tax, the proceeds pledged, first, to the payment of certain state road bonds, the residue to become a part of the state highway funds to be expended through the state highway department.

Still another act of 1932 (Gen. Acts of Extra Session 1932, p. 314) levies a further one-cent gallonage tax for the state road and bridge fund to be expended under the state highway department.

A reading of these several acts discloses they are all similar in form and substance, save in the matter of distribution, the public agencies to administer them, and the particular highways to which the taxes here in question are allocated.

They levy uniform taxes throughout the state, to be collected through a state agency, brought into the state treasury, then allocated to the several counties.

Together with other statutes, they all look to the construction and maintenance of a highway system throughout the state, open to the use of all the people of the state, and all others having occasion to use them. Local roads, state trunk roads, and federal aid roads are all incorporated into a connected system, each rendering the other more valuable; among other things, bringing an increasing stream of travel into centers of business, and contributing to the educational, social, and business progress of the whole state.

The acts in question provide a measure of state supervision over the faithful and effective use of these funds for road purposes by the county authorities. The state examiner of public accounts is charged with the duty of examining each year whether the funds are employed as required by law, and report infractions to the Attorney General of the state, who shall direct prosecutions. The state highway commission is authorized to inspect the work done by county agencies, and, if it appears such funds are not being expended "profitably and correctly," report to the state examiner of accounts, etc.

In each of the acts above noted there appears the following provision: "The tax and all penalties herein provided for shall be held as a debt payable to the State of Alabama by the person against whom the same shall be charged and all such penalties and assessments shall be a lien upon the property in this State of the party charged therewith." Gen. Acts 1927, pages 329, 330, § 10.

This provision is quite conclusive that these taxes are state taxes.

We note the following averment in the petition for mandamus: "Petitioner avers that the gasoline purchasers in Jefferson County have paid into said fund for gasoline purchased by them in Jefferson County an amount greatly in excess of the amount which Jefferson County receives under the disbursement of said funds."

Taking this as true on demurrer, and assuming that the taxes, wherever paid, are passed on to the consumer, and should be treated as paid where the consumer buys the gas, we observe that one of the bases on which excise taxes on motor fuels are levied for highway purposes is the benefit derived by the purchaser from good roads constructed and maintained by the tax he pays.

Now this beneficial use has no relation to county boundaries. Purchasers of gas in one county may use it on the roads in many counties, or even beyond state lines; neither are the purchasers, the taxpayers, under above averment, confined to the citizens of the county where purchased.

The sole indicia of a county tax is in the allocation of the fund to counties, to be expended by county agencies on roads in their respective counties. The allocation of state funds to counties is recognized in our Constitution.

Our state road bond amendments both allocate a minimum of such state funds to the highways in the several counties. This, to assure a spread of the benefits throughout the state. Nor does their expenditure through county agencies earmark the tax as a county tax. The Constitution allocates the state three-mill tax for public schools, to the several counties, to be distributed and expended through county agencies in the public schools of the respective counties.

Many statutes might be mentioned wherein state aid is given to counties in the promotion of the public functions, delegated to them by the state.

Without drawing out the discussion, we are clear to the conclusion the taxes in question are state taxes, not county taxes.

The power of the state, through its legislative body, to levy such state taxes for a recognized public purpose, and to cause them to be so expended as will, in legislative judgment, best accomplish such purpose, is not open to serious debate. Scarcely any tax paid by the citizen comes back to him or his community in benefits proportionate to the amount paid.

Dealing with the special matter in hand, the Legislature may have regard to a road system throughout the state, constructed and maintained by local funds, state funds, and federal aid funds, all co-ordinated to a common end.

What we have written is not to be taken as an expression of opinion that the present system of distribution of this fund in equal parts to each of the sixty-seven counties, without regard to area, population, or road needs, is the most equitable that could be devised; nor that the apportionment of road

resources between county and state agencies is the best. What we do hold is that these are matters of legislative judgment and discretion; and the legislation before us is not so arbitrary, unjust, or capricious as to be violative of constitutional guaranties.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.